```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                    :
FIKRE WONDIMANTE
                                    :
     v.                             : Civil Action No.  DKC 2004-3718
                                    :
FANA ASSEFA, et al.
                                    :
```

**MEMORANDUM OPINION**

Presently pending are: (1) Defendants' motion to amend their answer (paper 69); (2) Plaintiff's motion for a protective order concerning her immigration status (paper 76); (3) Plaintiff's unopposed motion for a protective order concerning the application for a T-1 Visa (paper 77); (4) Plaintiff's Motion to Quash (paper 83); (5) Fisher B. Edward's motion to quash or modify a non-party subpoena (paper 86); and (6) Plaintiff's Motion to Quash Subpoenas Duces Tecum (paper 89).

**I. Background**

On August 2, 2004, Plaintiff Fikre Wondimante filed this action in the Circuit Court for Montgomery County. Plaintiff alleges that she met Defendants Fana Assefa and Hirute Assefa in Addis Ababa, Ethiopia in 1994. Plaintiff contends that she entered into an employment agreement with Hirute Assefa to work as a maid and caretaker for Zelela Dubale, Hirute Assefa's mother and that Hirute Assefa offered her a monthly salary of two-hundred dollars, which she accepted. According to Plaintiff, the arrangement also

included an offer to secure a visa for Plaintiff if she agreed to come to the United States.

Plaintiff alleges that she worked in Ethiopia from 1994 until 2000, when she came to the United States, arriving on or about June 16, 2000, using a passport and visa secured by Hirute Assefa. For approximately the next four years, Plaintiff maintains she lived and worked at the Assefa residence at 10724 Cloverbrooke Drive, in Potomac, Maryland. In her complaint, Plaintiff seeks payment for work performed pursuant to federal and state wage and hour laws. Plaintiff also claims fraud in the inducement of contract and unjust enrichment. The action was removed to this court on November 22, 2004.

**II. Motion to Amend Answer (paper 69)**

Defendants seek to amend their answer to add an additional affirmative defense that: "The claims raised by Plaintiff are barred in whole or in part pursuant to 29 U.S.C. § 213(a)(15)." They assert that the factual basis for this defense only surfaced during Plaintiff's deposition, thus providing good cause to allow amendment after the deadline set in the scheduling order. *See CompuSpa, Inc. v. Inter'l Bus. Machs. Corp.*, No. Civ.A.DKC 2002-0507, 2004 WL 1459272, at *1-2 (D.Md. June 29, 2004) (noting that Fed.R.Civ.P. 16(b)'s "good cause" standard governs motions to amend pleadings filed after scheduling order deadlines). *See also*

2

*O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154-55 (1st Cir. 2004).

Plaintiff opposes the requested amendment, contending that her testimony at deposition was entirely consistent with her Amended Complaint and thus, if there is a factual basis for the affirmative defense, it should have been apparent to Defendants previously and, furthermore, that the new defense is futile. She also asserts that allowing the late amendment would cause delay because of the additional discovery it would warrant.

The proposed affirmative defense relies on 29 U.S.C. § 213(a)(15), which exempts from both minimum wage and overtime provisions: "Any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves." As explained by Defendants, they believe this exemption applies "where less than 20 percent of the total working time is spent on general household duties." 29 C.F.R. § 552.6. They further contend that the deposition testimony first revealed the extent of the caretaking duties, as opposed to general housekeeping.

The court agrees with Plaintiff. The Amended Complaint is very detailed as to the nature and extent of Plaintiff's asserted duties, along with a daily time line. If there was a question in Defendants' mind as to the percentage devoted to each type of duty that prevented the assertion of the affirmative defense, they were

3

obligated to ferret out the information within the confines of the scheduling order. Any clarifying testimony provided at Plaintiff's deposition cannot be said to be such a surprise that a late amendment is appropriate.

### III. Discovery Disputes

#### A. Standard of Review

The general standard for discovery as set forth in Fed.R.Civ.P. 26 is relatively broad:

> Rule 26 governs discovery entitlement and provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ."[3] Fed.R.Civ.P. 26(b)(1). While the Federal Rules of Civil Procedure do not define relevance, the Federal Rules of Evidence do, as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Or, as rephrased in the commentary, "[d]oes the item of evidence tend to prove the matter sought to be proved?"

---

[3] The rule further provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed.R.Civ.P. 26(b)(1). The 2000 amendments to Rule 26 created these two categories of discoverable information, one as a matter of right and one conditional on proof of good cause. Commentators have noted that "[i]t is [only] at this point where a *new* claim or defense is the focus of discovery not relevant to the current ones that calls for a determination whether to allow discovery that goes to the subject matter limit." See, e.g., 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice &*

>   *Procedure*: Civil 2d § 2008 (Supp.2004).
>   (emphasis added).

*United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 409 (D.Md. 2005).

The Fourth Circuit has explained that discovery requests may, however, be limited:

> On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit "the frequency or extent of use of the discovery methods otherwise permitted" under the Federal Rules of Civil Procedure if it concludes that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(2).  Further, upon motion of a party and "for good cause shown," the court [in which the action is pending or, on matters relating to a deposition,] in the district in which a deposition is to be taken may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order that the discovery not be had.  Fed.R.Civ.P. 26(c).

*Nicholas v. Wyndham Int'l., Inc.*, 373 F.3d 537, 543 (4th Cir. 2004).

**B. Analysis**

**1.  Motions for Protective Order (papers 76, 77).**

**a. Immigration Status.**

Plaintiff objects to providing information about her current immigration status, contending that it is irrelevant to her allegations, is highly sensitive, and could be used by Defendants to intimidate and harass her.

Defendants contend that Plaintiff has put both her past and present immigration status in issue, making the discovery relevant, and that any fears of intimidation or harassment are meritless. The questions at issue are:

> 9. Please identify your visa and/or immigration status in the United States since you left the Assefa residence in May of 2004. If there have been any changes to this status, please identify the date of such change of status.
>
> 10. Describe in detail any and all attempts you have made to apply for immigration status (other than what you may have previously identified with respect to the T-1 visa application) since May of 2004. Specifically, please identify the type or nature of any desired immigration status, and specific efforts and activities which have been made with respect to obtaining such immigration status.

(Paper 78, at 1-2).

Defendants contend that Plaintiff's current immigration status is directly relevant to Plaintiff's claim that Defendants fraudulently induced Plaintiff into a contract by promising to procure her a visa to remain permanently in the United States. Defendants explain:

> As of the filing of the Amended Complaint, Plaintiff, who no longer resides with

>  Defendants, was an "adult resident of Montgomery County, Maryland." Obviously then, Plaintiff is still residing in the United States. This raises questions as to whether Plaintiff now is legally a resident in the United States, is now legally able to work and sustain herself in the United States, and/or has obtained immigration status such that her mother and child are living with, or can live with, her here in the United States. *If the answers to all of these questions . . . are "no," then Plaintiff's allegations regarding misrepresentations on those points would seem to be undermined.* After all, if it was Defendant's misrepresentations that a visa would be procured allowing Plaintiff to legally reside in the United States, why is Plaintiff still in the United States - under the exact same circumstances - after having left Defendants' alleged "control?"

(Paper 79, at 3-4)(citations omitted)(emphasis added).

The court does not believe that Plaintiff having an illegal immigration status would undermine Plaintiff's claims. Defendants' arguments would require the presumption that, had the Defendants in fact promised to procure Plaintiff a permanent visa, Plaintiff would be motivated to remain at Defendants' residence indefinitely until she obtained the visa. Such a presumption is illogical. Certainly, if an employer-employee relationship existed between Plaintiff and Defendants, as Plaintiff alleges, and Plaintiff labored in Defendants' home for several years without getting paid, Plaintiff would have sufficient motivation to leave Defendants' residence *regardless* of whether Plaintiff's current immigration status is that of an illegal alien. Thus, the questions about

7

Plaintiff's current immigration status are not relevant to Plaintiff's claims regarding Defendants' misrepresentations.

Defendants also contend that Plaintiff's credibility might be affected by the answers as to her current immigration status, not just generally if she has been deceitful, but specifically because of her contentions about the circumstances that brought her here. Defendants explain: "[D]iscovery requests directed to Plaintiff's current immigration status seek[] information relating to the circumstances of Plaintiff's arrival and presence in the United States, which Plaintiff has put at issue." (Paper 79, at 5). This argument is also illogical. At issue in this case are the circumstances surrounding Plaintiff's stay with Defendants in the United States from 2000 to 2004. While any statements made by Plaintiff about the circumstances of her stay with Defendants are relevant, determining Plaintiff's current immigration status would not provide *any* information about what Plaintiff may have stated in the past concerning her stay with Defendants. Thus, Plaintiff's current immigration status is not relevant to Plaintiff's credibility.[1]

---

[1] Defendants further maintain that Plaintiff's current immigration status is relevant because such information may provide a defense pursuant to *Hoffman Plastics Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137 (2002). In *Hoffman Plastics*, the Supreme Court held that the National Labor Relations Board did not have authority to award backpay to illegal aliens. *Id.* at 151. The Court held such awards "unduly trench[ed] upon explicit statutory prohibitions" under the Immigration Reform and Control Act of 1986, which
(continued...)

8

Moreover, other courts have recognized the chilling effect from being forced to reveal immigration status, whether documented or not. *See e.g., Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004)(upholding protective order); *In re Reyes*, 814 F.2d 168 (5th Cir. 1987) (granting writ of mandamus directing district court to withdraw discovery order). In *Rivera*, an employer sought discovery of the immigration status of twenty-three Latina and Southeast Asian female immigrants who had filed a Title VII claim against the employer. *Rivera*, 364 F.3d at 1061. In affirming the district court's denial of such discovery, the Ninth Circuit explained:

> Granting employers the right to inquire into workers' immigration status in cases like this would allow them to raise implicitly the threat of deportation and criminal prosecution every time a worker, documented or undocumented, reports illegal practices or files a Title VII action. Indeed, were we to direct district courts to grant discovery requests for information related to immigration status in each case involving national origin discrimination under Title VII, countless acts of illegal and reprehensible conduct would go unreported.

*Id.* at 1065. This court agrees with the Ninth Circuit's reasoning in *Rivera* that allowing discovery of immigration status will likely

---

[1](...continued)
prohibits employers from knowingly hiring undocumented workers. *Id.* Because Plaintiff seeks past wages, as opposed to backpay, a *Hoffman Plastic* defense is not available regardless of Plaintiff's immigration status. *See Zeng Liu v. Donna Karan Int'l, Inc.*, 207 F.Supp.2d 191, 192 (S.D.N.Y. 2002)(holding that *Hoffman Plastics* does not apply to claims for unpaid wages); *Flores v. Amigon*, 233 F.Supp.2d 462, 463 (E.D.N.Y. 2002)(same).

dissuade plaintiffs like Ms. Wondimante from pursuing potentially meritorious claims. Therefore, even presuming Plaintiff's immigration status was of marginal relevance to the issues presented here, any such relevance is substantially outweighed by the potential harm in revealing such information. *See Nicholas*, 373 F.3d at 543 (upholding protective order against discovery of a party's immigration status, and holding such discovery was "cumulative and duplicative, unduly burdensome, and harassing").

Conversely, pending applications to permit Plaintiff to reside lawfully in the United States might present a different scenario, because the applications might affect her current state of mind and credibility as to the past events. If there are pending proceedings in which the circumstances under which she came to the United States might play a role, Plaintiff may have motive to describe those circumstances so as to enhance her prospects of success. Thus, Plaintiff will have to provide information as to any current ongoing attempts to obtain permission to reside lawfully in the U.S. Such information, however, will be subject to the same protections agreed to by the parties concerning the specific T-1 Visa application.[2] If Plaintiff's only pending

---

[2] T-1 Visas are granted to individuals who are victims of human trafficking. *See* 8 U.S.C. § 1101(a)(15)(T)(i)(I)-(IV); 8 C.F.R. § 214.11(b)-(d)(providing eligibility requirements for T-1 Visa status and explaining application procedures).

application is the T-1 Visa application, no further discovery will be permitted into Plaintiff's current immigration status.

**b. T-1 Visa Application.**

Plaintiff filed a motion seeking a protective order regarding her application for work visas that provides that documents and interrogatory answers relating to Plaintiff's application for a T-1 Visa shall be protected. Specifically, the documents will be held by the receiving party solely for use in connection with this action, and the information will not be disclosed to anyone other than counsel, parties, court reporters, and the court, without the consent of Plaintiff or court Order. The proposed Order (particularly ¶ 6), however, does not comply with all aspects of Local Rule 104.13, referring to Local Rule 105.11, and thus must be modified before it can be approved.

**2. Motions to Quash Subpoena Duces Tecum (papers 83, 89).**

Defendants issued subpoenas to the United States Citizenship and Immigration Service, the United States Department of State, and the United States Customs and Border Protection, seeking production of all immigration documentation relating to Plaintiff. Specifically, the subpoenas seek:

> (1) Any and all immigration records related to the individual known as Fikre Wondimante, including but not limited to visas, visa applications, interview notes, correspondence, asylum applications, and/or applications for lawful permanent residency.
>
> (2) Any and all immigration records related to the individual known as Hirut Assefa Negash, including, but not limited to visas, visa applications, interview notes, correspondence,

12

> asylum applications, and/or applications for lawful permanent residency.
>
> (3) Any and all immigration records related to the individual known as Hirut Assefa Negash with respect to the B-1/B-2 visa issued May 18, 2000, Control No. 20001394840001 or any other records related to this visa.

(Paper 83, attachment 1).[3]  Defendants contend that they are seeking oral and written representations made by Plaintiff regarding her reasons for entering the country, immigration history, and other information in the government's files.

Plaintiff objects to Defendants' efforts to obtain this information, again contending that such efforts chill her attempt to effectuate her rights, and seek irrelevant and prejudicial information that is not sufficiently relevant to her claims.  The agencies themselves have not objected to producing the documents.

The material as to current applications is discoverable as would be any statement Plaintiff has made regarding her arrival with Defendants.  As with the T-1 Visa application material, there is no reason this information cannot be obtained subject to the protective order to be resubmitted by the parties.  Obviously, the government agencies already know of this lawsuit and the questions being raised about Plaintiff's prior and current immigration status.  If the information is kept confidential and used only for this litigation, the purported prejudice to Plaintiff will be

---

[3] "Hirut Assefa Negash" is an alias used by Plaintiff. (Paper 90, at 3).

13

minimized. Plaintiff's view of the irrelevance of her dealings with government agencies is too restricted, and her fear of harassment a bit exaggerated. The circumstances of Plaintiff's arrival in the United States, and any statements she has made about it, are pertinent to Plaintiff's claim.

To summarize, the only documentation Defendants may discover from the subpoenaed government agencies are: (1) documentation of Plaintiff's pending applications to reside lawfully in the United States and (2) documentation of any statements Plaintiff has made to government agencies regarding her arrival in the United States. If Plaintiff's T-1 application is the only pending application (and Plaintiff has herself supplied the documentation), Defendants may only discover documentation of Plaintiff's statements to government agencies regarding her arrival in the United States.

**3. Motion to Quash or Modify by Fisher B. Edward (paper 86).**

Fisher B. Edward moved to quash or modify a subpoena served on him by Defendants, or for a protective order. Mr. Edward was a witness to Plaintiff's working conditions, duties, and treatment by Defendants and provided a declaration in support of Plaintiff's claims. He was served with a deposition subpoena, which he contended was an effort to intimidate him. The subpoena sought records reflecting assistance he has provided to unrelated individuals involved with immigration matters, as well as personal business and tax records. These matters are, he contended, totally

14

unrelated to his declaration or the dispute between Plaintiff and Defendants.

The deposition was scheduled for February 1, 2006, and Mr. Edward stated that he would appear, but would not provide the material to which objection was noted in this motion.  Defendants have not responded to the motion, but the parties have filed a stipulation, stating that the matters raised by the motion were resolved and no further information is sought from Mr. Edward.  Accordingly, his motion to quash will be denied as moot.

A separate order will be entered.


                                                   /s/
                                      DEBORAH K. CHASANOW
                                      United States District Judge