IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FIKRE WONDIMANTE         :

                          :

    v.                      : Civil Action No. DKC 2004-3718

                          :

FANA ASSEFA, et al.     :

                          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case are: (1) the motion of Defendants Fana Assefa, Mehret Assefa, and Dawit Berhaneselassie for summary judgment (paper 101); (2) Plaintiff Fikre Wondimante's motion to strike Defendants' supplemental answer to Plaintiff's first set of interrogatories (paper 104); (3) Plaintiff's motion to strike certain testimony and for attachment (paper 114); (4) Plaintiff's motion for expedited ruling on the motion for attachment (paper 122); and Defendants' motion for extension of time to respond to Plaintiff's motion to strike and for attachment (paper 115). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court will grant in part and deny in part Defendants' motion for summary judgment. Plaintiff's motion to strike will be granted as to Defendants' supplemental interrogatory responses with the exception of one witness. Plaintiff's motion to strike testimony in support of Defendants' motion for summary judgment will be denied as moot. Plaintiff's motion for attachment and for expedited ruling will be

denied.  Defendants' motion for extension of time will be denied as moot.

## I.  Background

Plaintiff claims that she accompanied Defendants when they moved from Ethiopia to the United States and worked for Defendants as a domestic servant, but that she was not paid for her work.  She asserts claims based on federal and state minimum wage and overtime statutes, a state wage collection statute, common law fraudulent inducement, and common law unjust enrichment.  The following facts are based on the record and are either uncontested or presented in the light most favorable to Plaintiff.

Plaintiff alleges that she worked for members of Defendants' family as a domestic worker in Addis Ababa, Ethiopia between 1994 and 2000.  Plaintiff contends that she entered into an employment agreement to come to the United States to work as a maid in Defendants' home and as a caretaker for Zelela Dubale, the mother of Hirute Assefa and Defendants Mehret and Fana Assefa.[1]  Plaintiff also alleges that she was offered a monthly salary of two-hundred dollars for her services and claims that the arrangement included

---

[1] In the record Hirute Assefa's name is spelled either as Hirute, Hiruth, or Hirut.  For consistency the first spelling is utilized within this Memorandum Opinion.

an offer to secure a visa for Plaintiff and later for her son to come to the United States.[2]

Plaintiff came to the United States, arriving on or about June 16, 2000, using a passport and visa allegedly secured by Hirute and Fana Assefa.  For approximately the next four years, Plaintiff maintains she lived and worked at the Assefa residence at 10724 Cloverbrooke Drive, in Potomac, Maryland.  Plaintiff explains that during this time she worked seven days a week caring for Ms. Dubale, preparing and serving meals, attending to guests, and cleaning the home.  Defendants contest this claim, arguing that Plaintiff was a guest in their home and was treated as an adopted member of their family.

Plaintiff filed this action on August 2, 2004, after leaving the Assefa residence on approximately June 4, 2004.  The action was removed to this court on November 22, 2004.  Plaintiff's complaint asserts five claims against all three defendants: (1) violation of the Fair Labor Standards Act (FLSA), (2) violation of the Maryland Wage Payment and Collection Law (MWPCL),(3) violation of the

---

[2] In her amended complaint, Plaintiff alleged that these offers were made by Hirute Assefa, (paper 29, at 4), but in her deposition, Plaintiff stated that the general terms of this offer were described and her wages of $200 per month confirmed by Fana Assefa after Plaintiff arrived in the United States, (paper 107, Ex. 1, Wondimante Dep., at 106-07).  It is not clear from this testimony what conversations Plaintiff had with Fana Assefa in Ethiopia regarding her future employment in the United States.

Maryland Wage and Hours Law (MWHL), (4) fraud in the inducement of contract, and (5) unjust enrichment.

Defendants argue in their motion for summary judgment that they are entitled to complete or partial summary judgment based on eight issues, addressed individually below.  Plaintiff moves to strike Defendants' supplemental interrogatory responses because they were allegedly provided long after Defendants were aware of the information contained in the supplemental responses.  (Paper 104).  She also moves to strike, based on allegations of fraud, all testimony by Fana Assefa and Yonathan Worku in support of Defendants' motion for summary judgment.  (Paper 114).  Plaintiff moves for attachment of Defendant Fana Assefa's home based on the same alleged fraud.  (Paper 114).

**II.  Summary Judgment Standard of Review**

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir.

1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324.  However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997).  There must be "sufficient evidence favoring the nonmoving party for a jury to

return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Defendants raise two affirmative defenses that must be pled and proven by them: the FLSA domestic caretaker defense and the statute of limitations defense. The inquiry involved on a summary judgment motion "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252. Because Defendants bear the burden on these issues, they "must remove genuine doubt from the issue altogether." *Hoover Color Corp. v. Bayer Corp.*, 199 F.3d 160, 164 (4th Cir. 1999) (internal quotation marks omitted), *cert. denied*, 530 U.S. 1204 (2000); *see also Proctor v. Prince George's Hosp. Ctr.*, 32 F.Supp.2d 820, 822 (D.Md. 1998) (evidentiary showing by movant "must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party") (internal quotation marks and italics omitted). Summary judgment will not be appropriate unless the movant's evidence supporting the motion "demonstrate[s] an absence of a genuine dispute as to every fact material to each element of the movant's [defenses] and the non-movant's response fails to raise a genuine issue of material fact as to any one element." *McIntyre v. Robinson*, 126 F.Supp.2d 394, 400 (D.Md. 2000) (internal citations omitted).

## III.  Plaintiff's Authorization to Work in the United States

All Defendants contend that they are entitled to summary judgment on all counts because Plaintiff's immigration status did not authorize her to work in the United States at the time she was allegedly a domestic employee in Defendants' home.  This argument is unpersuasive.

The Supreme Court has held that individuals who are not authorized to work in the United States cannot be awarded back pay by the Federal Labor Relations Board after being dismissed due to union activity.  *Hoffman Plastics Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 149 (2002).  The Court reasoned that awarding backpay "for years of work not performed, for wages which could not lawfully have been earned," *id.*, would conflict with the intent of Congress in passing the Immigration Reform and Control Act of 1986 (IRCA), 8 U.S.C. § 1324a, which prohibits employers from hiring or continuing to employ persons not authorized to work in the United States.  *Id.* at 148.

Individuals not authorized to work in the United States are also unable to assert failure to hire claims based on race or age discrimination.  *Reyes-Gaona v. N.C. Growers Assoc., Inc.*, 250 F.3d 861 (4th Cir.) (age discrimination), *cert. denied*, 534 U.S. 995 (2001); *Egbuna v. Time-Life Libraries, Inc.*, 153 F.3d 184 (4th Cir. 1998) (Title VII), *cert. denied*, 525 U.S. 1142 (1999).  A failure to hire discrimination case requires a plaintiff to prove that he

or she was qualified for the position sought. *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998), *cert. denied*, 526 U.S. 1099 (1999). A plaintiff unauthorized to work in the United States can never make the necessary showing that he was qualified for the position sought because qualification depends upon "whether the applicant was . . . authorized for employment in the United States at the time in question." *Egbuna*, 153 F.3d at 187.

Neither the holdings nor the reasoning of these decisions prohibit Plaintiff's claim for payment for work she actually performed. Both *Egbuna* and *Hoffman Plastics* involved a plaintiff seeking payment as a remedy for work that he wished to perform, but was not allowed to perform. Since *Hoffman Plastics* was decided, several courts have considered how IRCA affects claims under the FLSA brought by plaintiffs not authorized to work in the United States. One decision explicitly allowed claims for statutorily mandated payment for services actually performed, despite the plaintiff's lack of authorization for employment. *Zavala v. Wal-Mart Stores, Inc.*, 393 F.Supp.2d 295, 321-25 (D.N.J. 2005); *see also Renteria v. Italia Foods, Inc.*, No. 02-C-495, 2003 WL 21995190 (N.D.Ill. 2003) (allowing undocumented plaintiffs to assert claims for insufficient overtime pay but not FLSA retaliation). No court

has applied *Hoffman Plastics* or *Egbuna* to prevent a plaintiff from claiming payment for work she actually performed.[3]

Defendants argue that the reasoning in *Egbuna* bars all of Plaintiff's claims in this case because they are based on an alleged employment relationship and "IRCA . . . statutorily disqualifies any undocumented alien from being employed as a matter of law." *Egbuna*, 153 F.3d at 187. Defendants' interpretation of *Egbuna* reaches too far. Mr. Egbuna's statutory disqualification from employment related only to whether he could prove that he was legally qualified for employment, a critical part of his Title VII claim. There is no requirement under the FLSA, Maryland state employment statutes, or common law unjust enrichment or fraud that a plaintiff seeking payment for work actually performed show that she was qualified for any position. Regardless of whether she was legally qualified for employment, Plaintiff alleges that she in fact performed services for Defendants as their employee and seeks compensation for those services. *Egbuna* has no application to such a case.

---

[3] Defendants assert that three cases have applied "some type of IRCA-based limitation principle to FLSA" while only one case has refused to do so. (Paper 102, at 8). While the three cases cited by Defendants have limited FLSA claims based on retaliation, none of these cases dismissed claims based on work actually performed. *See Singh v. Jutla & C.D. & R's Oil, Inc.*, 214 F.Supp.2d 1056 (N.D.Cal. 2002); *Renteria*, 2003 WL 21995190 at *6; *Cortez v. Medina's Landscaping, Inc.*, No. 00-C-6320, 2002 WL 31175471 (N.D.Ill. 2002). Indeed, in *Renteria* the undocumented plaintiffs' claims for statutorily mandated wages for past work were allowed to go forward. *Renteria*, 2003 WL 21995190 at *2.

**IV. Liability of Defendants Dawit Berhaneselassie and Mehret Assefa**

Defendants Dawit Berhaneselassie and Mehret Assefa seek summary judgment on all counts, arguing that Plaintiff forecasts insufficient evidence to establish that either of them had any employment relationship with Plaintiff, made any misrepresentations, or received any benefit from Plaintiff's services.

**A.   Dawit Berhaneselassie**

Dawit Berhaneselassie is the half-brother of Defendants Mehret and Fana Assefa.  He has no blood relation to Ms. Dubale, the elderly woman for whom Plaintiff allegedly served as a caretaker. (Paper 102, Ex. F, Berhaneselassie Dep., at 14).  Until 2003, Berhaneselassie lived in Fana Assefa's home at 10724 Cloverbrooke Drive. (Paper 102, Ex. E, at 17).  Berhaneselassie admits that he sometimes ate the meals Plaintiff prepared at the home, but did not do so regularly.  (Paper 107, Ex. 5, Berhaneselassie Dep., at 46). Plaintiff claims that beginning in summer 2000 she had an agreement to launder Berhaneselassie's clothes and clean his room in the home in exchange for twenty dollars per week.  (Paper 107, Ex. 1, Wondimante Dep., at 215-16).  Plaintiff does admit that she did not base her decision to come to the United States on any statement made by Berhaneselassie.  (Paper 102, Ex. C, Wondimante Dep., at 216-17, 332).

**B.   Mehret Assefa**

Defendants Mehret Assefa and Fana Assefa are sisters who reside together in the home Fana Assefa owns in Potomac, Maryland, where Plaintiff allegedly performed domestic service for over three years.  Plaintiff alleges that, in addition to living in the home and benefitting from Plaintiff's domestic labor, Mehret Assefa supervised and directed her efforts.   Plaintiff stated in her deposition that Mehret would direct her to cook, (paper 107, Ex. 1, Wondimante Dep., at 214), and to clean, (*id.* at 227).   Fisher Edward, a witness for Plaintiff, also testified in his deposition that Mehret Assefa told him that "we" employ Plaintiff and pay her "500 dollars." (Paper 107, Ex. 9, Edward Dep., at 215).   Tadelech Teffera, another of Plaintiff's witnesses, also testified in her deposition that she overheard Mehret Assefa tell Plaintiff "first of all, you take order . . . from mommy [Ms. Dubale], second . . . Fana and third myself -- Mehret." (Paper 107, Ex. 8, Teffera Dep., at 135).   Plaintiff also alleges that Mehret Assefa gave Plaintiff's family 1000 Ethiopian Birr to allow them to buy an ox. (Paper 107, Ex. 1, Wondimante Dep., at 308).

**C.  Employment**

The FLSA defines potentially liable employers broadly. The term "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and the meaning of "employ" "includes to suffer or

permit to work," 29 U.S.C. § 203(g). Under this expansive
definition of employment, Plaintiff has at least established a
question of fact as to whether Berhaneselassie "suffered" her
employment and permitted her to perform housework and cook meals
for him. Furthermore, the alleged agreement between Plaintiff and
Berhaneselassie whereby he was to pay her twenty dollars each week
to clean his room and launder his clothes is sufficient to
establish an employment relationship. Berhaneselassie argues that
this relationship is too minor to serve as a basis for the
significant damages Plaintiff claims, but the degree of damages
attributable to each Defendant cannot properly be determined in
this motion for summary judgment.

The MWHL defines an employer as "any person who employs an
individual in the State or a successor of the person." Md. Code
Ann., Lab. & Empl. § 3-501(b). The MWPCL definition of an
"employer" includes "a person who acts directly or indirectly in
the interest of another employer with an employee." Md. Code Ann.,
Lab. & Empl. § 3-401(b). Neither Maryland statute includes a
minimum threshold in terms of hours or wages to trigger these
definitions. Under either definition, Plaintiff's evidence that
she had an agreement to clean Berhaneselassie's room and launder
his clothing is sufficient to establish an employment relationship.
Plaintiff asserts facts which may establish a broader employment

relationship with Berhaneselassie, but the sufficiency of this evidence need not be resolved at this time.

Similarly, Plaintiff has established a material question of fact as to whether Mehret Assefa was her employer for purposes of both the FLSA and the MWHL. Plaintiff's factual allegations that Mehret gave her work instructions and paid her family are sufficient evidence to allow the trier of fact to conclude that Mehret suffered Plaintiff's employment and that she was acting on behalf of Fana Assefa in directing Plaintiff's work activities.

Under MWPCL, however, an employer is defined as "any person who employs an individual in the State or a successor of the person." Md. Code Ann., Lab. & Empl. § 3-501(b). Under this definition, another employee "who himself is paid a wage by the employer" and who only supervises the employee's work is not liable for wages owed by the employer to the complaining employee. *Watkins v. Brown*, 173 F.Supp.2d 409, 414 (D.Md. 2001). Despite this narrower definition of employer, Plaintiff has forecast sufficient facts that the trier of fact could infer that Mehret actually employed Plaintiff for purposes of the MWPCL. Plaintiff's evidence indicates that Mehret directed Plaintiff's work activities, told others that "we" pay Plaintiff, and made at least one payment to Plaintiff's family. Mehret is not herself an employee of Fana, but is a member of the household and an alleged beneficiary of Plaintiff's services. She is distinguishable from

the fellow employee who was held not to be an employer in *Watkins*.

*Id.*

**D.  Unjust Enrichment**

In order to establish a claim of unjust enrichment, Plaintiff

must prove:

> (1) the plaintiff confer[red] a benefit upon
> the defendant; (2) the defendant knows or
> appreciates the benefit; and (3) the
> defendant's acceptance or retention of the
> benefit under the circumstances is such that
> it would be inequitable to allow the defendant
> to retain the benefit without the paying of
> value in return.

*Benson v. State*, 389 Md. 615, 651–52 (2005) (citing *Caroline County*

*v. Dashiell*, 358 Md. 83, 95 n.7 (2000)).

Plaintiff forecasts sufficient evidence to support the trier

of fact in making these three conclusions with regard to both

Berhaneselassie and Mehret Assefa.   Plaintiff testified that

Berhaneselassie consumed meals she prepared and lived for years in

the home she cleaned.   This is a benefit conferred and if

Plaintiff's allegations are true Berhaneselassie is aware of the

services she performed.   Regardless of whether Plaintiff has

established broader wrongful conduct by Berhaneselassie, he

allegedly promised to pay Plaintiff to clean his room and launder

his clothes and then failed to pay her.   This testimony alone is

sufficient to create a genuine dispute of material fact as to

whether justice requires Berhaneselassie to repay Plaintiff.

Plaintiff alleges that Mehret lived for years in the home that she cleaned, ate meals she prepared, and supervised her household work.  These activities would confer substantial benefits on Mehret and she would be aware of these benefits.  Plaintiff testified that Mehret instructed her to cook and clean and told others that she was being paid, but did not pay her.  This evidence would be sufficient for the trier of fact to conclude that Mehret's retention of this benefit without paying Plaintiff for her services would be unjust.

**V.  Fraudulent Inducement**

All defendants move for summary judgment on Plaintiff's claim for fraudulent inducement to contract.  Plaintiff has not forecast sufficient evidence of any particular misrepresentation uttered by any Defendant that reasonably convinced her to come to the United States to work.  In order to prevail on a fraudulent inducement claim, a plaintiff must show:

> (1) that the defendant made a false representation; (2) that its falsity was either known to the defendant, or the misrepresentation was made with such reckless indifference to the truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the person claiming to be injured thereby; (4) that such person not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and would not have done the thing from which the injury had resulted had not such misrepresentation been made; and (5) that such person actually suffered damage directly resulting from such fraudulent misrepresentation.

15

*Parker v. Columbia Bank*, 91 Md.App. 346, 359 (citing *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 333 (1982)), *cert. denied*, 327 Md. 524 (1992). When the asserted misrepresentation is a promise of some future action, the plaintiff must also produce evidence that the promisor did not intend to perform under the promise at the time the promise was made. *Councill v. Sun Ins. Office*, 146 Md. 137, 150 (1924). "A fraudulent pre-existing intent not to perform a promise made cannot be inferred from the failure to perform the promise alone." *Tufts v. Poore*, 219 Md. 1, 10 (1959) (citing *Lip v. Lip*, 158 Md. 207, 216 (1930)).

Plaintiff alleges in her complaint that while she was working for Hirute Assefa in Ethiopia, Hirute Assefa promised her a salary of $200 per month and a green card for herself and her child if she came to the United States to work in Fana Assefa's home. Plaintiff claims that she was fraudulently induced into agreeing to work for Defendants on the basis of this promise and the help from the Assefa family in obtaining travel documents and tickets to the United States. (Paper 29, at 4-6, 12-13).

Plaintiff admitted in her deposition that she did not rely upon any statement made by Dawit Berhaneselassie or Mehret Assefa in deciding to come to the United States. (Paper 102, Ex. C, Wondimante Dep., at 332). Based on this testimony, Plaintiff cannot establish several required elements of her fraudulent inducement claim. Plaintiff forecasts no evidence that either

Berhaneselassie or Mehret Assefa made any specific false representation or that Plaintiff reasonably relied upon anything either of them said in agreeing to come to the United States and work for the Assefa family.

Plaintiff offers some evidence that Fana Assefa was involved in bringing her to the United States, because Fana Assefa took Plaintiff to the U.S. embassy and helped her obtain a visa. (Paper 107, Ex. 1, Wondimante Dep., at 91-95). Plaintiff also testified that Fana Assefa told her after she arrived in the United States that she would make $200 per month. It is unclear from this testimony whether Plaintiff alleges that Fana Assefa made any promises before Plaintiff agreed to come to the United States that Plaintiff relied upon in making that decision. (Paper 107, Ex. 1, Wondimante Dep., at 106-07). Even if Plaintiff does allege that Fana Assefa made a promise of future payment before Plaintiff came to the United States, such a promise of future action cannot be the basis of a fraud claim unless Fana Assefa had no intention of performing her promise at the time the statement was made. *Councill*, 146 Md. at 150. Plaintiff must offer evidence in addition to Fana Assefa's failure ultimately to perform in order to prove this intent. *Tufts*, 219 Md. at 10. Plaintiff offers no such evidence.

Plaintiff's complaint alleges that Hirute Assefa made specific representations to Plaintiff that caused her to come to the United

States to work in Defendants' home.   Plaintiff argues that Defendants are liable for these alleged misrepresentations because Hirute Assefa was their agent.   This agency theory of liability is not persuasive based on the evidence forecast by Plaintiff.   The record does not reflect any specific misrepresentation made by Hirute Assefa and relied upon by Plaintiff in coming to the United States.   Even if this evidence were present however, Plaintiff forecasts no evidence of Defendants' already-formed intent not to comply with the promise, *Councill*, 146 Md. at 150, either when they allegedly authorized Hirute Assefa to make the promise or when it was made.

## VI.   FLSA Domestic Caretaker Exception

Defendants contend that they are entitled to summary judgment on Count I, Plaintiff's FLSA claims, because Plaintiff was excepted from coverage under FLSA as a person "employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves." 29 U.S.C. § 213(a)(15).

Defendants did not plead the domestic caretaker exception as an affirmative defense in their original answers to the complaint. Their motion to amend their answers to include this affirmative defense on October 5, 2005, (paper 69), was denied on March 2, 2006.   (Paper 100).   This court reasoned that Defendants had not shown good cause to add the FLSA Domestic Caretaker defense because

18

Defendants were aware of Plaintiff's alleged duties as a caretaker for Ms. Dubale from the amended complaint and there was no surprise sufficient to make a late amendment appropriate. (Paper 99, at 3-4).   Defendants argue that they should be allowed to raise the affirmative defense in this motion for summary judgment despite their failure to plead it in their answer, but this argument is unpersuasive.

Fed.R.Civ.P. 8(c) requires defendants to include "any . . . matter constituting an avoidance or affirmative defense" in their answer to the complaint.   Defendants have sometimes been allowed exceptions to this rule to raise defenses for the first time on a motion for summary judgment when there was no prejudice to the plaintiff. *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999), *abrogated on other grounds by*, *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). In no case has a court allowed a defendant to raise a defense on summary judgment after denying a motion to amend the answer to include that defense.   Instead, in *Brinkley*, the plaintiff was aware of and prepared to counter the affirmative defense raised on summary judgment because it had been raised in an earlier administrative proceeding.   *Id.* at 613.   As a result, the plaintiff was not prejudiced by allowing the defense to be raised on summary judgment.   *Id.*   The facts of this case are distinguishable. Defendants failed to raise the domestic caretaker defense until discovery had commenced.   Discovery closed without the answer being

19

amended to include the defense, and this court subsequently denied Defendant's motion to amend the answer. Plaintiff would be prejudiced if Defendants were allowed to raise the defense on summary judgment because Plaintiff has not had a full opportunity to take discovery on this issue. Plaintiff objects to reopening discovery because she wishes to proceed to trial quickly. (Paper 122, at 5-6; paper 107, at 25 n.14). Given this prejudice to Plaintiff and the fact that Defendants still assert no good cause for their failure to raise the domestic caretaker defense in their answer, this court will not allow Defendants to raise this defense on summary judgment and will not reconsider its decision denying Defendants' motion to amend their answers.

## VII.  Statutes of Limitations

Defendants assert that each of Plaintiff's claims is barred, in whole or in part, by the applicable statute of limitations. Because the statutes of limitations for FLSA claims and Maryland state claims differ, they will be examined separately.

### A.  FLSA Claim

Defendant argues that a two-year statute of limitations is applicable and bars Plaintiff's FLSA claims for work performed more than two years before the August 2, 2004, filing date of this action. Plaintiff argues that a three-year statute of limitations for a willful violation applies and that the statute of limitations should be equitably tolled such that her FLSA claim for wages based

20

on work performed as early as June 16, 2000 are not barred by the statute of limitations.

The statute of limitations for an FLSA claim is generally two years but is extended to three years if the violation was "willful." 29 U.S.C. § 255(a). A violation of FLSA is willful, as compared to merely negligent, if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985)). Plaintiff bears the burden of establishing willfulness under FLSA, *id.* at 135, although the statute of limitations defense remains an affirmative defense that Defendant must plead and prove. Fed.R.Civ.P. 8(c).

The statute of limitations on an FLSA action will be equitably tolled when the plaintiff "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). The Fourth Circuit distinguished a case where the defendant merely sought to clarify its position from cases of active deception. *Lekas v. United Airlines, Inc.*, 282 F.3d 296, 301 (4th Cir. 2002). The court went on to compare these facts, which did not warrant equitable tolling, to the facts of another case, *United States ex rel. Humble Oil & Ref. Co. v. Fidelity &*

*Cas. Co.*, 402 F.2d 893, 896–97 (4th Cir. 1968), which did. *Lekas*, 282 F.3d at 301. Equitable tolling was appropriate when a defendant admitted liability and promised to pay the plaintiff's claim but negotiations dragged on until after the limitations period had expired.

There is a genuine issue of material fact as to whether Defendants engaged in a willful violation of FLSA, and as to whether and until what date equitable tolling may apply. Plaintiff testified that she has been almost totally unpaid for her services, and failure to pay any regular wage at all could support an inference of reckless disregard of FLSA's minimum wage provisions. Furthermore, Fisher Edward testified that Defendant Mehret Assefa told him that Defendants paid Plaintiff $500 per week, (paper 107, Ex. 9, Edward Dep., at 215), and the trier of fact could infer from these statements that Defendants knew that not paying Plaintiff would be illegal.

Plaintiff also forecasts evidence that, if believed, would support equitably tolling the statute of limitations on her FLSA claim. Plaintiff testified that Hirute Assefa told her that she would get paid fifteen months after coming to the United States, (paper 107, Ex. 1, Wondimante Dep., at 200), and that she asked Fana Assefa about payment after fifteen months of work. *Id.* at 198. Fana Assefa allegedly responded by telling Plaintiff that she would pay the money, a total of "$25,000 in Ethiopian Birr," into

an account in Ethiopia when Fana returned there. *Id.* at 198-99. These facts, if true and if the payment was not made, constitute affirmative deception of Plaintiff as to whether she was being paid similar to the defendant's promise to pay the plaintiff in *United States* ex rel. *Humble Oil*, 402 F.2d 893, 896-97.

Defendant is not entitled to partial summary judgment with respect to any portion of Plaintiff's FLSA claim because Plaintiff forecasts evidence that would support equitable tolling for at least fifteen months and application of a three-year limitations period. This scenario would bring Plaintiff's August 2, 2004, filing date within the limitations period for all of her work since June 2000. Tolling fifteen months past June 2000 would result in the limitations period beginning to run in September 2001. Plaintiff filed this case in August 2004, less than three years later.

**B. Maryland Statutory and Common Law Claims**

Under Maryland law, a civil action "shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5-101. Neither party disputes that the three-year limitations period provided in section 5-101 applies to each of Plaintiff's state law claims. To determine when the limitations period begins to run for any cause of action, Maryland applies the discovery rule and the

related concept of "inquiry notice," under which "[t]he statute of limitations will begin to run[] when the plaintiff has 'knowledge of circumstances which would cause a reasonable person in the position of the plaintiff[] to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [tort].'" *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448-49 (1988) (quoting *O'Hara v. Kovens*, 305 Md. 280, 302 (1986)). "[T]he question of whether the plaintiff[] [was] on inquiry notice of [her] cause of action more than three years before filing suit [is] a question of fact determinative of the limitations defense." *Id.* at 450. Summary judgment cannot be granted to a defendant based on a statute of limitations defense unless the defendant's evidence shows that "reasonable men could not find otherwise." *Id.*

Maryland also recognizes a continuation of events theory for initiating the limitations period, and under this theory "[w]here a contract does not mention the period of employment, and the claim of the employee is based upon 'continuous employment,' indicating one entire contract, even though the work may be interrupted from time to time, the statute will not run until the completion of the contract." *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 337 (1994) (quoting *Vincent v. Palmer*, 179 Md. 365, 374 (1941)). In *Vincent*, the plaintiff sought to collect on an employment agreement for profit sharing. The limitations period for this action was deemed not to run until completion of the employment relationship

because the contract did not specify a term of employment. *Vincent*, 179 Md. at 375.

A question of fact remains here as to when the statute of limitations on Plaintiff's claims began to run. Plaintiff alleges that she worked continually for Defendants between June 2000 and August 2004. She alleges that she was promised wages of $200 per month. Regardless of whether such a monthly salary would ordinarily be subject to the "continuing events" doctrine, in this case Plaintiff also testified that she was promised her wages after fifteen months of employment and at that time was again promised that her wages would be paid when Fana Assefa traveled to Ethiopia. (Paper 107, Ex. 1, Wondimante Dep., at 198-200). This testimony is sufficient to allow the trier of fact to find a continuing employment relationship at least for the first fifteen months of Plaintiff's alleged employment.

Moreover, this testimony is also sufficient for the trier of fact to conclude that Plaintiff had no reason to know that she was not being paid until at least fifteen months into her alleged employment. A reasonable inquiry before that time, even if it did reveal that no wages were being paid, would not have indicated that anything was amiss if, as Plaintiff testified, she was to collect her wages only after this time period. Therefore, the trier of fact could conclude that Plaintiff was not on inquiry notice of her cause of action for unpaid wages until at least fifteen months

25

after June 2000, a date less than three years before this action was filed.

## VIII.  Work Performed in Ethiopia

Defendants argue that they are entitled to summary judgment as to any compensation or other damages Plaintiff seeks for work performed in Ethiopia.  Plaintiff traveled with Defendants to Ethiopia for six weeks between March and May 2002.  Plaintiff concedes that she is not entitled and does not seek damages based on work she performed while in Ethiopia.  (Paper 107, at 41-42). Thus, the parties are in agreement that Plaintiff is not entitled to recover damages under any of her claims based on work performed while in Ethiopia, but the scope of Plaintiff's claims in the complaint does not make this limitation clear.  Partial summary judgment will be granted in favor of Defendants as to any work performed by Plaintiff while in Ethiopia.

## IX.  Damages Available Under Maryland Statutory Claims

Defendants seek partial summary judgment on Plaintiff's claims for treble damages based on MWHL and MWPCL.  Defendants argue that Plaintiff can claim only minimum wages and overtime as damages under MWHL, and that she can claim treble damages under MWPCL only to the extent of agreed upon wages and not based on minimum wage and overtime provisions contained in MWHL or FLSA.

Plaintiff makes separate claims under two distinct state statutory schemes which prohibit different conduct and allow

different remedies.  The MWHL, Md. Code Ann., Lab. & Empl. §§ 3-401 to 3-405, prescribes minimum wages and overtime wage requirements and allows remedies including damages, liquidated damages, and attorney's fees.  The MWHL does not authorize treble damages as a remedy.  The MWPCL, on the other hand, authorizes treble damages for certain violations, but "does not concern the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment."  *Friolo v. Frankel*, 373 Md. 501, 513-14 (2003) (MWPCL); *accord McLaughlin v. Murphy*, 372 F.Supp.2d 465, 474-75 (2004).  Plaintiff argues that MWHL and MWPCL should be read together to allow treble damages based on minimum wages never paid, but this argument is unpersuasive.  While MWHL, like FLSA, prevents individuals from contracting to work for a wage below the minimum wage, *Medex v. McCabe*, 372 Md. 28, 39 (2002), such conduct is not a violation of MWPCL and treble damages based on statutory minimum wages are not authorized by MWPCL.  *Friolo*, 373 Md. at 513-14.

Defendants do not contest that Plaintiff has adequately supported a claim under each statute, and request only partial summary judgment as to the damages available under each statute. Defendants correctly point out that MWHL does not allow treble damages and partial summary judgment will be granted as to Plaintiff's claim for treble damages in Count 3 of the amended complaint.

Defendants seek partial summary judgment under Count 2 of the amended complaint, Plaintiff's claim under the MWPCL, as to any claim for treble damages beyond the wages agreed upon by the parties.  Defendants are entitled to partial summary judgment as to any claim for unpaid minimum or overtime wages due only under FLSA or MWHL.   Plaintiff is not entitled to treble damages based on these amounts as a matter of law.

## X.  Attorney's Fees

Defendants contend that Plaintiff cannot support any claim for attorney's fees even if she prevails on her FLSA, MWHL, and MWPCL claims because, they argue, none of these statutes authorize fee awards to private pro bono counsel.  Plaintiff is represented by the law firm Skadden, Arps, Slate, Meagher & Flom, as well as by attorneys from the nonprofit legal aid organization CASA of Maryland, Inc.  (Paper 107, at 45).   Neither party contests that this representation has been undertaken on a pro bono basis without charge to Plaintiff.  Defendants argue that FLSA's fee shifting provision is intended only to offset costs to prevailing plaintiffs and that Plaintiff has incurred no legal costs.

FLSA provides that when a Plaintiff proves a violation of FLSA "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  Based on this language, it is mandatory that attorney's

fees be awarded to a prevailing plaintiff, although the amount of reasonable fees to be awarded is a matter of discretion for the court. *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984) (citing *VanDyke v. Gluefield Gas Co.*, 210 F.2d 620, 622 (4th Cir. 1954)). The purpose of the fee shifting provision in FLSA is to "promot[e] enforcement of important federal labor policies," and, because this purpose is similar to the purpose of the statutory civil rights fee shifting scheme, fee awards are determined "following the principles governing the award of such fees under [42 U.S.C.] § 1988." *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 n.1 (4th Cir. 1992).

Defendants rely heavily on *Sabey v. United States*, 6 Cl.Ct. 36 (1984). In that case, the United States Claims Court held that a plaintiff who had prevailed on an FLSA claim was not entitled to market rate attorney's fees. The court instead awarded only the salary and overhead costs incurred by the union that provided counsel for the plaintiff *Id.* at 36. The Claims Court reasoned that, unlike fee shifting provisions intended to encourage lawsuits vindicating civil rights, FLSA's fee shifting provision was intended only to prevent prevailing plaintiffs from incurring any out of pocket expenses. *Id.* at 36-37.

The parties cite no authority, nor does the court's research reveal any, suggesting that any court has ever denied attorney's fees to a plaintiff prevailing under FLSA because the plaintiff was

represented without charge.   Instead, at least one court has awarded attorney's fees to a private firm representing a prevailing plaintiff without charge.   *Wales v. Jack M. Berry, Inc.*, 192 F.Supp.2d 1313, 1317, 1329 (M.D.Fla. 2001).   Courts have also awarded attorney's fees to plaintiffs represented without charge by legal aid organizations.   *See, e.g.*, *Salinas v. Rodriguez*, 963 F.2d 791, 792 (5th Cir.), *reh'g denied*, 978 F.2d 187 (1992); *Diaz v. Robert Ruiz, Inc.*, 808 F.2d 427, 428-29 (5th Cir. 1987); *De Leon v. Trevino*, 163 F.Supp.2d 682, 683, 685 (S.D.Tex. 2001).   In any event, the issue is not whether Plaintiff is required to pay, but what hfee is reasonable under the circumstances.   Even in *Sabey*, the plaintiff did not personally incur expenses, being entitled to the benefitas a union member.   Nevertheless, the union was reimbursed so it suffered "no financial detriment for having represented plaintiffs . . . ." *Sabey*, 6 Cl.Ct. at 37.

Defendants cite no Maryland authority supporting their argument that Plaintiff should not be awarded attorney's fees if she prevails on her claims under MWHL or MWPCL.   Each statute provides the court with discretion to award fees to a prevailing plaintiff. Md. Code Ann., Lab. & Empl. §§ 3-427(d), 3-507.1(b). This discretion is to be exercised liberally in favor of prevailing plaintiffs.   *Friolo*, 373 Md. at 515-18.

## XI.  Plaintiff's Motions to Strike

Plaintiff moves to strike two sets of Defendants' supplemental interrogatory responses, arguing that Defendants were aware of the supplemental information when they filed their original interrogatory responses.  Plaintiff also moves to strike the testimony of Fana Assefa and Yonathan Worku relied on by Defendants to support their motion for summary judgment.  Plaintiff argues that Fana Assefa committed perjury in her deposition testimony and suborned perjured testimony of Yonathan Worku.

## A.  Supplemental Interrogatory Responses

Plaintiff moves to strike Defendants' supplemental answer to Plaintiff's first set of interrogatories.  Plaintiff had sought the names and addresses of witnesses with information relevant to this action in her first set of interrogatories.  Defendants answered with a list of nineteen witnesses on August 19, 2005.  Defendants submitted two supplemental witness lists.  The first, dated January 20, 2006, lists nine additional witnesses.  (Paper 104, Ex. 5). The second, dated January 31, 2006, identifies seventeen additional witnesses and also listed one of the witnesses from the January 20 supplement response by a different name.  (Paper 104, Ex. 6). Plaintiff moves to strike both supplemental responses.

Pursuant to Fed.R.Civ.P. 26(e) a party is under a continuing obligation to supplement or correct required disclosures and discovery responses:

(1) A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. . . .

(2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Plaintiff argues that Defendants violated this provision because Defendants were aware of the additional witnesses at the time of their initial interrogatory responses and failed either to disclose these witnesses in the initial responses or to supplement the responses to add the additional witnesses within a reasonable time. Defendants argue that they could not have disclosed the identities of these witnesses earlier because some of them were mentioned in depositions and because "arguably every single person who has ever visited Fana's home, has ever been introduced to Plaintiff, or has ever known the parties, has knowledge relevant to the ultimate issue presented in this case." (Paper 108, at 6). Defendants fail to articulate when the identity of any of the witnesses came to light after their initial interrogatory responses. Based on the descriptions of the witnesses' identities

available in the record, they appear to be family friends or guests of the Defendants who were known and could have been disclosed in Defendants' initial interrogatory responses.   Furthermore, Defendants' argument makes clear that they made a strategic decision to supplement their interrogatory responses.   "[W]hen Plaintiff came forward . . . with affidavits from two witnesses supporting her case . . . Defendants thought it important to try to identify even more individuals among the hundreds who have visited their home or who know their families." (Paper 108, at 7).

Defendants' supposed inability to identify their friends, relatives, and guests in their initial interrogatory responses is unpersuasive in the absence of any more specific explanation as to when the identity of any of the additional witnesses came to light. Therefore, Defendants were under a duty to identify these witnesses in that interrogatory response.   Their efforts to supplement the response five months later and within two weeks of the close of discovery was not seasonable under Fed.R.Civ.P. 26(e), except as to Plaintiff's employer.[4]

---

[4] Defendants explain that one of the witnesses listed in the supplemental interrogatory responses was an employer of Plaintiff discovered as a result of Plaintiff's interrogatory responses.  The explanation of the identities of the witnesses in the supplemental interrogatory responses are insufficiently specific to determine which listed individual is Plaintiff's employer, but this witness will not be stricken.  (Paper 108, at 8 & n.4).

The duty to supplement imposed by Fed.R.Civ.P. 26(e) is enforced based on sanctions authorized by Fed.R.Civ.P. 37(c)(1), which authorizes the exclusion of evidence and witnesses:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

The sanction of exclusion of evidence is to be applied except when the non-disclosing party can demonstrate that the failure properly to disclose was "substantial[ly] justifi[ed]" or "harmless." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). This inquiry is conducted by use of a five-factor test; the first four factors focus on harmlessness, and the fifth factor focuses on substantial justification.[5] *Id.* at 596-97.

> [I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the

_____

[5] Defendants argue that the five-factor test is implicated only when information is not disclosed rather than when it is disclosed unseasonably. The Fourth Circuit has made clear, however, that this test applies to any exclusion of evidence pursuant to Fed.R.Civ.P. 37(c)(1). *S. States*, 318 F.3d at 597.

> nondisclosing party's explanation for its
> failure to disclose the evidence.

*Id.* at 597.

The fifth factor articulated in *Southern States* weighs in favor of excluding the witnesses.  As discussed above, Defendants provide no convincing reason why they could not have identified the additional witnesses at the time of their initial interrogatory responses and no explanation beyond their claim that they could not have identified all available witnesses.  There is no specific evidence in the record indicating that the identity or knowledge of any of the additional witnesses was revealed during the discovery process other than Plaintiff's employer.  Defendants thus provide no adequate "substantial justification" for their failure to provide this information at an earlier time.

The first, second, and fourth factors strongly suggest that Defendant's unseasonable disclosure of the identity of witnesses was not harmless and should be excluded.  The first factor, the surprise to Plaintiff, weighs in favor of exclusion.  Defendants contend that Plaintiff met some of the additional witnesses while living in their home.  Despite this fact, there is no evidence that Plaintiff knew the identity or addresses of these witnesses and Plaintiff had no reason to believe that these individuals might be called to testify in the case.  Plaintiff did not have a reasonable opportunity to depose these witness before the close of discovery because of their late disclosure and the schedule of depositions

near the end of the discovery period in this action. (Paper 104, Ex. 4).

The second factor concerns Plaintiff's ability to cure this surprise. It also weighs in favor of exclusion. Plaintiff would suffer less prejudice from this inadequate disclosure than the party adverse to the late disclosure in *Southern States*, but would still suffer significant prejudice that cannot be fully cured. In *Southern States*, an undisclosed expert opinion was revealed shortly prior to the expert's testimony at trial, and the court described the significant prejudice that would result from inadequate time to develop cross examination or a significant delay of the trial. *S. States*, 318 F.3d at 598. Plaintiff would also be prejudiced either by an inability to depose these witnesses in preparation for trial or by the delay in the resolution of the case that would be necessary to reopen discovery for the deposition of up to twenty-six witnesses. Plaintiff has indicated her eagerness to proceed to trial on her claims. A significant delay to reopen discovery would not be harmless.

The third factor concerns the extent to which the trial would be disrupted by this testimony, and it does not favor exclusion. There is no indication that the trial would be disrupted by the testimony, as in cases where the non-disclosed information is revealed only at or prior to trial. Finally, the fourth factor concerns the importance of the testimony Plaintiff seeks to

exclude.  The testimony of the additional witnesses would concern a critical dispute of fact in the case: whether Plaintiff was employed by or a guest of Defendants.  The additional testimony, however, is likely to be significantly duplicative of the many witnesses already identified by Defendants who may testify as to their observations on this issue.  Under the circumstances the important but duplicative nature of this evidence does not suggest that the late disclosure of these witnesses was harmless.  It will be critical for Plaintiff to dispute any testimony regarding her status as a guest in proving her case.  As a result, this factor also weighs in favor of excluding the additional witnesses.  Based on the first, second, fourth, and fifth factors, Defendants' supplemental witness list was neither harmless nor justified, with the exception of one witness, Plaintiff's employer.  As a result, it will be stricken with the exception of this one witness.

**B.  Testimony of Fana Assefa and Yonathan Worku**

Plaintiff moves to strike any testimony of Fana Assefa and Yonathan Worku relied upon by Defendants in their motion for summary judgment.  The court will deny this motion as moot.  The presence or absence of the testimony of Fana Assefa and Yonathan Worku would not affect the resolution of Defendants' motion for summary judgment as to any issue.  Defendants would be entitled to partial summary judgment as to the same issues without the

consideration of this testimony, and the disputed testimony would
not warrant partial summary judgment as to any additional issue.

**XII.  Attachment of Defendant Fana Assefa's Home**

Plaintiff contends that Defendant Fana Assefa has suborned
perjury and attempted a fraud in her deposition testimony.   She
seeks prejudgment attachment of Fana Assefa's home as a result of
this alleged fraud.

Maryland authorizes statutory prejudgment attachment in a
contract or tort case when "the debtor is a nonresident
individual," or when "the debtor has absconded or is about to
abscond from the State . . . [or] has removed or is about to
remove, from his place of abode in the State with the intent to
defraud his creditors."  Md. Code Ann., Cts. & Jud. Proc. § 3-303
(b), (d).   The evidence in this case does not support either of
these circumstances.   Plaintiff instead argues for prejudgment
attachment on the basis of fraud.

Maryland courts have recognized a doctrine allowing attachment
of property before judgment due to fraud by a party even when
attachment would not be permitted by section 3-303.   *Teferi v.*
*Dupont Plaza Assoc's*, 77 Md.App. 566 (1989); *Levitt v. Md. Deposit*
*Ins. Fund Corp.*, 66 Md.App. 524 (1986); *see also United States* ex
rel. *Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489 (4th Cir. 1999)
(recognizing and applying Maryland's doctrine of attachment to
prevent fraud).   Three elements are required in order to attach

38

property under this doctrine.   The plaintiff must establish a "substantial likelihood [(1)] that fraud was committed by the defendant[,] . . . [(2)] that the assets were fraudulently obtained, and [(3)] . . . that the defendant would dispose of assets before judgment." *United States* ex rel. *Rahman*, 198 F.3d at 501 (citing *Teferi*, 77 Md.App. at 573).

Even if Plaintiff's affidavits demonstrate a substantial probability of fraud and disposition of assets, there is no evidence that Fana Assefa's home was fraudulently acquired. Federal courts recognize a similar equitable power to order attachment in certain circumstances, *United States* ex rel. *Rahman*, 198 F.3d at 496-97, but strictly limit this power to instances where there is a "nexus between assets sought to be frozen through an interim order and the ultimate relief requested."   *Id.* Maryland's doctrine of equitable prejudgment attachment to prevent fraud is "not unlike" the federal doctrine and also requires a nexus between the property and the fraud that justifies relief. *Id*. at 501.   Plaintiff's evidence does not suggest that Fana Assefa's home was fraudulently acquired.   Prejudgement attachment therefore is not appropriate.

Defendants have requested a thirty day extension of the deadline to respond to Plaintiff's motion to strike certain testimony and for attachment.  This request will be denied as moot.

**XIII.   Conclusion**

For the foregoing reasons Defendants' motion for summary judgment and Plaintiff's motions to strike will be granted in part and denied in part.   Plaintiff's motion for attachment and for expedited ruling will be denied, and Defendants' motion for extension of time will be denied as moot.   A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge